## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JOSE VIGAY, | DOCKET NUMBER |
| Appellant, | AT-0353-24-0313-I-1 |
| v. | |
| U.S. POSTAL SERVICE, | DATE:  August 7, 2026 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Jose Vigay, Hialeah, Florida, pro se.

Roderick Eves, Esquire, and Brandon Truman, Esquire,
    St. Louis, Missouri, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his restoration appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and REMAND the case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant is a City Carrier at the Miami-Norland Station. Initial Appeal File (IAF), Tab 4 at 10. As a City Carrier, the appellant's duties include the delivery and collection of mail on foot or by vehicle, and he is "required to carry mail weighing up to 35 pounds in shoulder satchels or other equipment and to load or unload container of mail weighing up to 70 pounds." *Id.* at 11. On January 22, 2017, the appellant accepted a limited-duty position as a Modified City Carrier at the Jose Marti Station, following his partial recovery from a compensable injury that occurred on October 11, 2005. IAF, Tab 1 at 14-16. According to the agency, this was a "sedentary job assignment that is not a vacant funded position" in which the appellant worked on "E360 [customer compliant] cases." IAF, Tab 4 at 5, Tab 14 at 10-11.

According to an August 21, 2023 work capacity evaluation, the appellant's physician listed his medical restrictions and limitations, including that he could only perform sedentary desk work with no more than 15 minutes of walking per hour with less than 2 hours of walking per 8-hour day, no overtime, and no lifting more than 10 pounds. IAF, Tab 1 at 8. In response, on August 28, 2023, the appellant received a text message from his supervisor instructing him to stay home. IAF, Tab 13 at 28.

According to the agency, in or around September 2023, the appellant's limited-duty position as a Modified City Carrier at the Jose Marti Station ended. IAF, Tab 4 at 5. The agency further alleged that the appellant was sent back to the Norland Station where he was "orally offered" a job casing mail up to 4 hours a day, which the appellant turned down because he wanted to continue working on E360 cases and believed the job violated his medical restrictions against standing. *Id.* at 5. The agency also alleged that on numerous dates between November 2023 and June 2024, the appellant reported to work and performed duties. IAF, Tab 14 at 6-8, 37-85.

On the other hand, the appellant denied that he was offered another job around September 2023 and alleged that after he filed a grievance on September 23, 2023, the Norland Station manager and a supervisor continued to inform him that there was no work available for him at the Norland Station. IAF, Tab 1 at 18, Tab 13 at 28. He submits a statement that on October 28, 2023, in response to his requests for work outside of the Norland Station, the area manager told the union shop stewards something to the effect of, "[the appellant] was hired to deliver mail. If he can't deliver the mail, I do not [have] a job for him." IAF, Tab 9 at 30, Tab 16 at 4. He alleges that on days when he went to work, he was "consistently told to go home early" because there was no work for him. IAF, Tab 13 at 28, Tab 15 at 8. Around this time, the appellant's physician provided another work capacity evaluation, dated November 21, 2023, which again limited the appellant to only performing sedentary desk work with no more than 2 hours of walking per 8-hour day, no overtime, and no lifting more than 10 pounds, but provided an additional limitation that the appellant "can only work 15 mins/hr at work." IAF, Tab 1 at 9, Tab 14 at 12.

On February 14, 2024, the appellant filed the instant appeal, alleging that the agency violated his restoration rights when it ended his modified job assignment and sent him home without searching for alternative work he could perform within his medical restrictions. IAF, Tab 1 at 3. After the appeal was filed, a series of emails beginning on March 7, 2024, and ending with a March 27, 2024 certification, demonstrated that the agency conducted a search within the agency's 50-mile radius from work and within the appellant's medical restrictions identified in the November 21, 2023 work capacity evaluation, but did not identify any available positions. IAF, Tab 14 at 6, 13-24. Nevertheless, on

April 26, 2024, the agency offered the appellant a Modified City Carrier position at the Norland Station.[2] *Id.* at 6, 25-27.

The administrative judge provided the appellant with the Board's standards for restoration appeals and instructed him to meet his jurisdictional burden. IAF, Tab 5. She later issued another order informing him of his burden to nonfrivolously allege that the agency's denial of his restoration rights was arbitrary and capricious because it did not meet its obligation to search within the local commuting area for vacant positions to which it could restore the appellant and consider him for any such vacancies. IAF, Tab 18 at 2-3. However, she did not inform him that the agency's delay in conducting a job search may constitute an arbitrary and capricious denial of restoration. In response, the appellant submitted a September 13, 2024 grievance decision, finding that the agency had "violated Articles 21 and 19 of the National Agreement, specifically [the Employee and Labor Relations Manual (ELM)] Section 546.12 and Handbook EL-505 when they failed to make every effort toward assigning [the appellant] to Limited Duty consistent with [the appellant's] medically defined work limitation tolerance." IAF, Tab 19 at 6.

Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 1 at 2, Tab 21, Initial Decision (ID) at 1, 7-8. She found that appellant made nonfrivolous allegations that he was absent from his position due to a compensable injury, that he recovered sufficiently to return to work in a position with less demanding physical requirements than those previously required, and that the agency denied his request for restoration by not returning him to employment. ID at 6. However, she found that the appellant did not raise a nonfrivolous allegation that the agency's denial of his restoration request was

---

[2] It is unclear whether the appellant accepted the April 26, 2024 job offer. The agency does not allege or provide evidence as to whether the appellant accepted it, and the appellant alleged that the "job indicated in the job offer was never available for [him] to work." IAF, Tab 15 at 8.

arbitrary and capricious because it failed to conduct a search, nor did he identify any vacant funded position that he could perform within his restrictions. ID at 7. She also explained that the appellant's grievance decision that found that the agency had violated the ELM, which was a self-imposed obligation, was insufficient to constitute a violation of 5 C.F.R. § 353.301(d) such that a resulting denial of restoration would be rendered "arbitrary and capricious" for purposes of establishing Board jurisdiction. *Id.* Lastly, she found she was without authority to consider the appellant's remaining discrimination and equal employment opportunity reprisal claims. *Id.* at 8.

The appellant has filed a petition for review alleging that the agency did not conduct a timely job search, and reasserting that in September 2023 he was not offered a job and was instructed to go home because there was no work available for him. Petion for Review (PFR) File, Tab 1 at 1-3. He also reargues that the agency violated the ELM, the Americans with Disabilities Act, and the Rehabilitation Act. *Id.* The agency has responded. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge erred in finding that the appellant did not nonfrivolously allege that the agency denied him restoration rights.</u>

To establish jurisdiction over a restoration appeal as a partially recovered person, the appellant must make nonfrivolous allegations that: (1) he was absent from his position due to a compensable injury; (2) he recovered sufficiently to return to duty on a part-time basis or to return to work in a position with less demanding physical requirements than those previously required; (3) the agency denied the request for restoration; and (4) the denial was arbitrary and capricious. *Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶¶ 12, 14, 20-21. On review, the appellant does not challenge the administrative judge's finding that he made nonfrivolous allegations with respect to the first three elements, and we see no basis to disturb it. ID at 6. Thus, the dispositive issue is whether the appellant

satisfied his burden with respect to the fourth element that the agency's actions were arbitrary and capricious. *Id.*

With regard to the fourth element, the Board's sole inquiry is whether the agency complied with its obligation under 5 C.F.R. § 353.301(d), i.e., to search within the local commuting area for vacant positions to which it can restore the employee and to consider him for any such vacancies. *Cronin*, 2022 MSPB 13, ¶ 20; *see also Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 13. A determination whether an agency met its obligations under section 353.301(d) will turn on whether it "ma[d]e every effort" to restore a partially recovered employee "in the local commuting area" and "according to the circumstances in each case." *Cronin*, 2022 MSPB 13, ¶ 21 (quoting 5 C.F.R. § 353.301(d)).

Here, the record shows that beginning on March 7, 2024, the agency searched within 50 miles of the appellant's commuting area for a vacant funded position within the appellant's medical limitations in his November 21, 2023 work capacity evaluation. IAF, Tab 14 at 6, 13. Specifically, the agency searched for work within and outside the appellant's craft as well as within and outside his regular schedule. *Id.* at 13. As the administrative judge correctly determined, the appellant has not challenged the scope of the local commuting area, proffered any evidence that the agency's 50-mile radius search failed to encompass his local commuting area, nor alleged that there were any vacant funded positions within his restrictions, either in the facility or the local commuting area, to which he could have been assigned. ID at 7. Instead, the appellant argues that the agency unreasonably delayed conducting its job search by about 7 months. PFR File, Tab 1 at 1-3. The appellant consistently alleged below that the agency was refusing to conduct a job search for alternative work within his medical restrictions and that his area manager refused to consider alternative work that was not "deliver[ing] the mail." IAF, Tab 1 at 3, Tab 9 at 30, Tab 16 at 4. However, as explained above, the administrative judge did not specifically notify the appellant that an agency's delay in conducting a job search

can constitute an arbitrary and capricious denial of restoration, nor did she address the issue of the agency's delay in her initial decision.  IAF, Tabs 5, 18; ID at 6-8.  Thus, we do so here.

An agency's delay in conducting a work search when work is "clearly available" or when the delay is "extreme and unexplained" may constitute an arbitrary and capricious denial of restoration.  *Chen v. U.S. Postal Service*, 114 M.S.P.R. 292, ¶ 11 (2010), *overruled on other grounds by Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶ 10 (2012).  As established above, the appellant has not alleged that there was a vacant position "clearly available," only that he believed his prior duties working on E360 customer complaint cases were still available because others were still performing those duties.  IAF, Tab 1 at 5. This assertion does not constitute a nonfrivolous allegation that work was clearly available.  Nevertheless, in the context of addressing restoration appeals, the Board has held that a 7- or 8-month delay is sufficiently extreme and unexplained as to be considered arbitrary and capricious.  *See Tram v. U.S. Postal Service*, 118 M.S.P.R. 388, ¶ 10 n.2 (2012) (agreeing with the administrative judge that the 8-month delay in conducting the job search was extreme and unexplained); *see Coles v. U.S. Postal Service*, 118 M.S.P.R. 249, ¶ 9 (2012) (affirming the administrative judge's decision that a 7-month delay in conducting a search constituted a "significant" delay), *overruled on other grounds by Cronin*, 2022 MSPB 13, ¶ 20 n.11.  Similarly, here the agency has not provided an explanation for its almost 7-month delay in conducting the job search.  Thus, we find that the appellant has nonfrivolously alleged that the agency's almost 7-month delay was extreme and unexplained and thus, that the agency arbitrarily and capriciously denied him restoration.[3]

---

[3] The appellant also reargued on review that the agency violated the ELM and an internal handbook; however, the administrative judge correctly determined that an agency's failure to comply with its self-imposed obligations cannot itself constitute a violation of 5 C.F.R. § 353.301(d) such that a resulting denial of restoration would be rendered arbitrary and capricious for purposes of establishing Board jurisdiction under

Because we find that the appellant has established jurisdiction over his appeal, he is entitled to a hearing at which he must prove the merits of his restoration appeal by preponderant evidence. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶¶ 11-12; 5 C.F.R. § 1201.57(c)(4). Accordingly, we remand the case to the regional office to allow the parties an opportunity to submit evidence and argument on the merits of this restoration appeal. On remand, the administrative judge also must adjudicate the appellant's disability discrimination claim and retaliation after providing him with notice of the applicable burdens and elements of proof and affording the parties an opportunity to present evidence and argument on this issue. *See Desjardin*, 2023 MSPB 6, ¶¶ 20-21 (finding that the Board is required to adjudicate claims of discrimination and retaliation in restoration appeals once the appellant has established that the challenged action is within the Board's jurisdiction and clarifying the analytical framework applicable to such claims).[4]

---

5 C.F.R. § 353.304(c). PFR File, Tab 1 at 1-3; ID at 7-8; *see Cronin*, 2022 MSPB 13, ¶ 20.

[4] It does not appear that the agency issued a formal written notice of its September 2023 decision to end the limited-duty Modified City Carrier position at the Jose Marti Station, nor that it provided the appellant with Board appeal rights. As with most Board appeals, a restoration appeal must be filed with the Board within 30 days after the effective date of the action being appealed, or 30 days after the date of receipt of the agency's decision, whichever is later. *Wright v. U.S. Postal Service*, 105 M.S.P.R. 425, ¶ 9 (2007). If the appellant made a request for restoration and the agency denied that request, the agency was required to notify the appellant of his Board appeal rights, and its failure to do so would normally justify a waiver of the filing deadline. *Id.* However, if the agency did not take an appealable restoration action, it had no obligation to provide the appellant with notice of appeal rights. *Id.* Thus, whether the agency's failure to provide the appellant with notice of his appeal rights would justify a waiver of the time limit to file the appeal depends on whether the agency took an action that is appealable to the Board. *Id.* Where the issues of the Board's jurisdiction and the timeliness of the appeal are inextricably intertwined, as in this case, the Board has found that the administrative judge must first address the jurisdictional issue before addressing the timeliness of the appeal. *Id.* Because we have found here that the appellant established jurisdiction over his restoration appeal and the issue of the timeliness of the appeal was not raised or developed in the record below, on remand the administrative judge should develop the record and make a finding on this issue.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                    _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.